Douglas P. Farr (13208)
Tucker F. Levis (17793)
Jack L. Darrington (18349)
BUCHALTER, A Professional Corporation
60 E. South Temple, Suite 1200
Salt Lake City, Utah 84111
Telephone: 801-401-8625
dfarr@buchalter.com
tlevis@buchalter.com
jdarrington@buchalter.com
*Attorneys for Defendants/Counterclaimants Paparazzi, LLC;*
*Misty Kirby; Trent Kirby; Chantel Reeve; and Ryan Reeve*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,<br><br>     Plaintiff,<br><br>vs.<br><br>PAPARAZZI, LLC, a Utah limited liability company; MISTY KIRBY, an individual; TRENT KIRBY, an individual; CHANTEL REEVE, an individual; and RYAN REEVE, an individual,<br><br>     Defendants. | **COUNTERCLAIMANTS/DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>Civil No.: 4:23-cv-00027-AMA-PK<br><br>Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |
| PAPARAZZI, LLC, a Utah limited liability company; MISTY KIRBY, an individual; TRENT KIRBY, an individual; CHANTEL REEVE, an individual; and RYAN REEVE, an individual,<br><br>     Counterclaimants,<br>vs.<br><br>AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation,<br><br>     Counterclaim Defendant | |

1

Pursuant to Federal Rule of Civil Procedure 56, Defendants and Counterclaimants Paparazzi, LLC ("Paparazzi"), Misty Kirby, Trent Kirby, Chantel Reeve, and Ryan Reeve (collectively, "Paparazzi Parties") hereby submit their reply memorandum in support of their Motion for Partial Summary Judgment (the "Motion").

## SUMMARY

The Court should grant the Motion because Auto-Owners has a duty to defend based upon the allegations in the Underlying Actions.[1] In Utah, an insurer has a duty to defend whenever there is the *potential* for coverage. *E.g.*, *Allegis Invest. Servs., LLC v. Arthur J. Gallagher & Co.*, 371 F. Supp. 3d 983, 994–95 (D. Utah Mar. 1, 2019). To avoid the duty to defend, an insurer must demonstrate that the allegations in the underlying actions are sufficiently clear to establish there is no possibility for coverage. *Id.* When evaluating the duty to defend, an insurer may not cherry-pick allegations that favor its position and ignore those favoring its insured. *See id.* Even a single allegation (or omission) can trigger an insurer's duty to defend. *Id.*

Unquestionably, the Underlying Actions establish the potential or possibility for coverage. Auto-Owners Insurance Company ("Auto-Owners") can neither single out allegations it contends support its unreasonably narrow interpretation of the Underlying Actions nor advocate for unsupported and unreasonable interpretations of the Policy. Instead, Auto-Owners must take all of the allegations and demonstrate that there is *no* potential for *any* coverage. It cannot do so.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in Paparazzi Parties' Motion. (*See* Dkt. No. 40.)

BN 84152205v3

First, Auto-Owners has a duty to defend under Coverage A because the Underlying Actions seek monetary damages for physical injuries (*i.e.*, bodily injury) caused by negligence or an accident (*i.e.*, occurrence). None of the exclusions conclusively, unmistakably, or completely apply to remove *all* potential for coverage. Second, Auto-Owners also has a duty to defend under the EPL Endorsement because the allegations in the *Teske* and *Souza* Actions allege that employment-related misrepresentations (*i.e.*, wrongful employment acts) were made to current and prospective Consultants (*i.e.*, employees under the Policy). And, again, none of the exclusions conclusively, unmistakably, or completely apply to remove *all* potential for coverage. For these reasons, Paparazzi's Motion should be granted, and Auto-Owners should be required to provide a defense in the Underlying Actions until they are resolved and the duty to indemnify can be determined.

## RESPONSE TO STATEMENT OF ADDITIONAL FACTS

Except for the fact set forth below, Paparazzi Parties do not dispute the existence of the facts set forth in Auto-Owners' Statement of Additional Material Facts. The duty to defend requires an analysis of *all* of the allegations in the Underlying Actions — not just those Auto-Owners cites as favorable to its position. As set forth in Paparazzi Parties' Statement of Facts, there are ample allegations that establish Auto-Owners has a duty to defend. (*See* Motion, at 4–25, Dkt. No. 40.)

4.      Counsel for Auto-Owners was first notified of and provided a copy of the First Consolidated Amended Class Action Complaint in the Consolidated Action on March 13, 2024.

BN 84152205v3

**RESPONSE:** This fact is disputed as both wrong and irrelevant. First, the First Consolidated Amended Class Action Complaint ("Consolidated Complaint") was filed on March 13, 2023. (Exhibit D: First Consolidated Amended Class Action Complaint, Case No. 2:22-cv-00439.)[2] Notably, Auto-Owners was defending Paparazzi Parties at the time the underlying consumer actions were consolidated via the Consolidated Complaint. (*See* Plaintiff's Appendix Exhibit 10: Reservation of Rights Letters.) As such, Auto-Owners actually was aware of the Consolidated Complaint. The Policy does not impose any continuing responsibility to notify Auto-Owners of every legal filing submitted in the Underlying Actions — especially when insurance defense counsel is actively defending these lawsuits and reporting to the carrier. (Ex. B at Auto-Owners_000183.) Auto-Owners' counsel in this lawsuit was also aware of the Consolidated Complaint at least in October 2023 when the parties participated in mediation and discussed the Consolidated Complaint.

## ARGUMENT

I. **Coverage A — The Underlying Actions Contain Allegations that Demonstrate the Potential or Possibility for a Covered Claim, and thus Auto-Owners has a Duty to Defend.**

### A. Auto-Owners Must Defend Because the Insuring Clause Is Triggered.

In its Opposition, Auto-Owners contends that the Underlying Actions do not seek damages for bodily injury caused by an occurrence. (Auto-Owners' Reply in Support of Motion for Summary Judgment at 5–7, Dkt. 45.)[3] To succeed, Auto-Owners must show that the pleadings in

---

[2] All exhibit references are to the Appendix in support of the Paparazzi Parties' Motion for Partial Summary Judgment and Opposition to Auto-Owners Motion for Summary Judgment, unless otherwise indicated. (*See* Dkt. 39.)

[3] Auto-Owners' Opposition to this Motion incorporates the arguments contained in its Reply brief. (See Dkt. 46: Auto-Owners' Opposition to Motion for Partial Summary Judgment.)

BN 84152205v3

the Underlying Actions *foreclose* all potential for coverage. Auto-Owners cannot do so. The Underlying Actions sufficiently allege the fact of, or at least leave open the possibility that they are seeking, damages covered by the policy. Thus, Auto-Owners has a duty to defend.

Contrary to Auto-Owners' convoluted arguments, this is a simple analysis. The Underlying Actions seek money (*i.e.*, damages) because of rashes, headaches, nausea, skin discoloration, itching, swelling, infections, and other physical injuries (*i.e.*, "bodily injury") caused by an accident or negligence (*i.e.*, "occurrence"). (*See* Dkt: 38: Paparazzi Parties' Opposition to Auto-Owners Motion for Summary Judgment at Section III.A.1.) As is typical in notice pleading for virtually every lawsuit across the country, the pleadings do not itemize damages in minute detail, show the computation for every element of monetary damages, or establish a causal connection for every single element of damages. The specifics are left to discovery and trial. This illustrates one reason why the duty to defend is broader than the duty to indemnify. The insurer has an obligation to defend its insured throughout the lawsuit, even if the damages ultimately awarded by the jury, judge, or other factfinder might possibly turn out not to be covered by the policy. *E.g.*, *Allegis Investment Servs., LLC,* 371 F. Supp. 3d at 994–95. The allegations in the Underlying Actions trigger coverage, and they certainly do not foreclose the possibility of coverage, so Auto-Owners must defend.

Paired with its self-serving recitation of allegations, Auto-Owners appears to contend that its Policy only imposes a duty to defend where the complaint alleges that damages are *directly* caused by bodily injury. (Dkt. 45: Auto-Owners' Reply in Support of Motion for Summary Judgment at 4–5.) Auto-Owners' is wrong again. The Policy's insuring clause simply does not

BN 84152205v3

require *direct causation* — whatever that term may mean — to trigger coverage. Coverage grants are construed liberally in favor of coverage. *Poulsen v. Farmers Ins. Exchange*, 2016 UT App 170, ¶ 9, 382 P.3d 1058, 1060 (noting Utah's "longstanding commitment" to liberal construction and interpretation of insurance policies to promote coverage). Where there is any ambiguity, uncertainty, or doubt, the policy should be given the "broadest protection" that the insured could reasonably expect. *Id.* Here, the Policy requires Auto-Owners to defend Paparazzi Parties against any suit seeking damages "because of" bodily injury. (Ex. B at Auto-Owners_000174.) The Policy does not define "because of." And, Auto-Owners fails to cite to any legal authority in support of its position. The Underlying Actions squarely seek damages because of bodily injury, obligating Auto-Owners to defend. For Auto-Owners, the best-case scenario is that this is an ambiguity that must be construed broadly in favor of coverage. *See, e.g.*, *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 587, 592–94 (N.D. Tex. 2006) (finding lawsuit seeking funds for replacement of headsets could be "damages because of bodily injury").

Finally, Auto-Owners contends that there is no "occurrence" because the Paparazzi Parties allegedly intended to misrepresent that Paparazzi's jewelry was lead and nickel-free. Again, Auto-Owners ignores numerous other allegations of negligent and accidental conduct by Paparazzi Parties that qualify as an occurrence. (*See, e.g.*, Ex. D, ¶ 149; Ex. A, ¶¶ 139–45.) That by itself is fatal to Auto-Owners' argument. Moreover, Auto-Owners' argument is legally incorrect as it conflates intention to misrepresent with what actually is required in order for there to be no occurrence or accident here — that is, intention to *cause physical injury*. *N.M. ex rel. Caleb v. Daniel E.*, 2008 UT 1, ¶¶ 11–13, 175 P.3d 566, 569–70. In order to be deemed "intentional" and

thus not an "occurrence" under the Policy, the physical harm or injury must be the actual design or intention of the insured, or it must be the natural and probable consequence of the insured's act. *Id.* For example, a driver may intentionally drive his car faster than the speed limit, or intentionally drive while intoxicated, but still be involved in an "accident" under the driver's liability policy. *Allstate Ins. Co. v. Patterson*, 904 F. Supp. 1270, 1270 (D. Utah 1995). Similarly, a person who intentionally uses a controlled substance and dies of an overdose may still have died accidentally. *Id.* at 1279–80 (listing other examples of intentional conduct that may be considered an "accident" under insurance policy). As one final example, a minor child intentionally hitting another minor child with a hockey stick can be deemed an "accidental" injury. *See N.M. ex rel. Caleb*, 2008 UT 1, ¶¶ 11–13, 175 P.3d 566, 571 (finding genuine issue of material fact precluding declaratory relief); *see also Patterson*, 904 F. Supp. at 1276–85 (finding genuine issue of material fact as to whether sexual acts with minor child were an accident potentially triggering coverage).

The Underlying Actions fall well short of alleging that Paparazzi Parties made misrepresentations with the intention to cause bodily harm to anyone. At most, the Underlying Actions allege knowing misrepresentations about the metallic content or quality of the jewelry. Auto-Owners' position is full of logical leaps and rests on an incomplete scientific analysis that is inappropriate to resolve on the pleadings alone. Auto-Owners is unable to cite any legal authority holding that an insurer does not have a duty to defend in an analogous scenario. So instead, Auto-Owners relies on easily distinguishable construction defect lawsuits with narrowly drafted complaints lacking *any* allegations of bodily injury. *See Owners Ins. Co. v. Greenhalgh Planning & Dev., Inc.*, No. 22-4008, 2023 WL 4994512, at *3 (10th Cir. Aug. 4, 2023) (alleging insured

7

constructed barn that was not up to code); *Green v. State Farm Fire & Cas. Co.*, 127 P.3d 1279, 1284 (Utah Ct. App. 2005) (alleging negligent soil compaction causing only economic loss); *Nova Cas. Co. v. Able Const., Inc.*, 983 P.2d 575, 580 (Utah 1999) (alleging negligent misrepresentation about restrictive covenant caused only economic loss to purchaser of property); *H.E. Davis & Sons, Inc. v. North Pacific Ins. Co.*, 248 F. Supp. 2d 1079, 1084 (D. Utah 2002) (alleging negligent soil compaction causing only economic loss).

Here, the Underlying Actions allege damages because of bodily injury caused by an occurrence. Auto-Owners may not defeat coverage by playing semantic games with policy language and ignoring allegations in the Underlying Actions that support Paparazzi's right to coverage. The Policy must be liberally construed in favor of coverage. So must the allegations in the Underlying Actions. Accordingly, Auto-Owners is obligated to provide a defense under Coverage A in the Policy.

## B. None of the Exclusions in Coverage A Conclusively, Unmistakably, and Completely Apply to Negate the Duty to Defend.

Without legitimate analysis, Auto-Owners contends the Expected or Intended Injury, Contractual Liability, Pollution, and Damage to Your Product exclusions somehow bar coverage. Substantively, none of those exclusions apply at this stage of the proceedings. The allegations in the Underlying Actions are drafted broadly and do not conclusively establish that any of the exclusions invoked by Auto-Owners apply to *any* of the claims asserted in these actions — much less to *all* claims in the Underlying Actions as would be required to avoid the duty to defend. *Allegis Investment Servs., LLC,* 371 F. Supp. 3d at 994–95 ("To negate its duty to defend, an insurer must . . . demonstrate that none of the allegations of the underlying claim is *potentially*

covered or that a policy exclusion *conclusively* applies to exclude all potential for such coverage." (emphasis added)). Procedurally, Auto-Owners cannot satisfy its burden to prove applicability of the exclusions. Instead, Auto-Owners concedes that the exclusions only apply to "some" claims, but it fails to articulate how the exclusions somehow piece together to negate all potential coverage as required to avoid its duty to defend.

### 1. Expected or Intended Injury Exclusion

Auto-Owners contends that the Underlying Actions allege that Paparazzi Parties intentionally misrepresented the metallic content or quality of its jewelry. Without a reasoned analysis, Auto-Owners then contends this alleged intentional act triggers the expected or intended injury exclusion. Again, Auto-Owners' analysis is wrong. Like an occurrence, the operative question is whether the insured intended to cause *physical injury* — not whether the conduct or act itself was intentional. (Ex. B at Auto-Owners_000176.) To accept Auto-Owners' position would lead to illusory coverage. As noted above, car accidents would no longer be covered because (according to Auto-Owners' faulty reasoning) the natural and probable consequence of driving a vehicle could lead to injuring another. The allegations in the Underlying Actions fall well short of conclusively establishing that alleged misrepresentations were done with the intention or expectation of producing bodily harm. (See *supra* Section I.A.) As such, the Expected or Intended Injury Exclusion is inapplicable, triggering the duty to defend.

### 2. Contractual Liability Exclusion

Similarly, the Contractual Liability exclusion does not apply to any claims in the Underlying Actions. Auto-Owners fails to analyze, or even discuss, the pertinent Policy language.

The exclusion in Coverage A applies only to bodily injury or property damage for which the insured is obligated to pay damages "by reason of the assumption of liability in a contract or agreement." (Ex. B at Auto-Owners_000175.) The exclusion does not have the broad application Auto-Owners desires. It applies to hold harmless or indemnification agreements. *See Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 341–42 (Utah 1997); *see also United Nat. Ins. Co. v. Int'l Petroleum & Exploration*, No. 2:04-cv-00631, 2007 WL 4561460, at *8–9 (D. Utah Dec. 20, 2007) (rejecting insurer's attempt to invoke "insured contract" exception where insurer failed to demonstrate applicability of exclusion). None of the underlying causes of action allege violation of a hold harmless or indemnification agreement. (Dkt. 40: Motion, at Statement of Facts, ¶¶ 29, 42, 55.) Therefore, the contractual liability exclusion does not apply.

In fact, Auto-Owners' position illustrates the broad procedural and evidentiary deficiencies in its arguments. Acknowledging that the exclusion does not apply to all claims in the Underlying Actions, Auto-Owners makes the conclusory claim that the exclusion applies to *some* claims. (Dkt: 45: Reply at 7.) But it fails to identify which specific claims, and in which lawsuits. In effect, Auto-Owners asks the Court to issue an advisory opinion on the application of certain exclusions "to the extent" that damages are awarded in the Underlying Actions that fit within each exclusion, which is wholly improper. *E.g.*, *Jordan v. Sosa*, 654 F.3d 1012, 1025–26 (10th Cir. 2011) (noting that Article III prohibits advisory opinion based on hypothetical factual scenarios).

The Contractual Liability exclusion applies to certain "*damages*" awarded in the Underlying Actions — not to categories or labels of legal claims. No damages have been awarded by the factfinder in the Underlying Actions, so analyzing the application of the Contractual

Liability exclusion is premature. Even if the contractual liability exclusion applied to damages ultimately awarded on some yet-to-be-defined claims, it would not absolve Auto-Owners of its duty to defend because other claims are still covered. Auto-Owners has a duty to defend Paparazzi Parties until the Underlying Actions conclude. To the extent damages are awarded under "warranty and contract-based claims" in the future, Auto-Owners can ask this Court to make a determination as to whether the damages awarded on those claims are subject to the Contractual Liability exclusion. (They are not.) But, for now, Auto-Owners must defend.

### 3. Pollution Exclusion

Likewise, the Pollution exclusion is inapplicable for several reasons. First, the metals allegedly contained in Paparazzi's jewelry are not "pollutants" as defined in the Policy. (Ex. B at Auto-Owners_000186.) Auto-Owners contends that the definition of pollutant is satisfied by claiming that metals are "solid" "chemicals." This is wrong. Courts look to the dictionary definitions of words when they are undefined or ambiguous terms in insurance policies. *E.g.*, *Fuller v. Director of Finance*, 694 P.2d 1045, 1047 (Utah 1985). "Chemical" is defined by Merriam-Webster's Dictionary as "a substance obtained by a chemical process or producing a chemical effect." *Chemical*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/chemical (last visited Aug. 22, 2024). The Cambridge Dictionary defines "chemical" as "any basic substance that is used in or produced by a reaction involving changes to atoms or molecules." *Chemical*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/chemical (last visited Aug. 22, 2024). These definitions contemplate traditional environmental pollution, like reactive substances used in

a lab, produced in factory, or discharged from a wastewater treatment plant. According to the Underlying Actions, lead, cadmium, nickel, arsenic, mercury, and the other metals were present in Paparazzi Products. A reasonable person would not expect these metals to be chemicals subject to the pollution exclusion. Auto-Owners could have defined "pollutant" more broadly to include "metals," "elements," or even "lead,"[4] but it chose not to do so. At best, there is ambiguity which must be resolved in favor of coverage.

Second, even if the metals are considered "pollutants," the metals were not discharged or released as required for the exclusion. (Ex. B at Auto-Owners_000175–77.) Discharge, dispersal, seepage, release and escape are "terms of art that bespeak of environmental contamination." *Int'l Petroleum & Exploration*, No. 2:04-cv-00631, 2007 WL 4561460, at *11 (D. Utah Dec. 20, 2007) (finding pollution exclusion did not apply to explosion that occurred during unloading of hazardous waste). A reasonable person would not expect the Pollution exclusion to apply to finished products, *i.e*., jewelry, used by consumers for their ordinary purpose. This case is wholly

---

[4] Auto-Owners erroneously relies on *Hartford Underwriter's Ins. Co. v. Estate of Turks*, 206 F. Supp. 2d 968, 977 (E.D. Mo. Apr. 30, 2002) for the proposition that "lead" is considered a pollutant in a policy that (according to Auto-Owners) allegedly contains an "identical pollution exclusion." In that case, however, the policy defined "pollutant" to expressly include "lead paint." *Id.* There are no allegations in the Underlying Actions that their injuries were caused by "lead paint." Regardless, the Policy that governs this dispute does not include "lead" or "lead paint" in its definition of pollutant. Notably, the *Estate of Turks* decision actually supports Paparazzi because it shows that sophisticated insurers like Auto-Owners know how to define "pollutants" to include certain substances they want to include. The fact that the insurer in *Estate of Turks* expressly listed "lead" in its "pollutant" definition confirms its belief that the term by itself does not apply to "lead," which therefore needed to be specified in the definition for a pollution exclusion to apply to lead risks. However, Auto-Owners did not include lead, nickel, or even "metals" in the "pollutant" definition it had the power to draft. It should not be allowed to add that omitted term under the guise of "interpretation."

12

dissimilar to those out-of-jurisdiction cases Auto-Owners cites, where lead paint was ingested and inhaled after it flaked off walls of a premise controlled by the named insured. *Auto-Owners Ins. Co. v. Housing Auth. of City of Tampa*, 121 F. Supp. 2d 1365, 1366 (M.D. Fla. 1999) (addressing alleged injuries resulting from ingestion and inhalation of lead from paint in walls of public housing apartments); *Estate of Turks*, 206 F. Supp. 2d 968, 975–76 (E.D. Mo. Apr. 30, 2002) (same); *Shalimar Contractors, Inc. v. Am. States Ins. Co.*, 975 F. Supp. 1450, 1457 (M.D. Ala. Aug. 19, 1997) (lead bearing debris or waste). In fact, the cases cited by Auto-Owners directly undercut its position by noting that lead is not hazardous "when it remains embedded in a wall; it becomes so only when it is somehow released from the wall and ingested by humans." *Estate of Turks*, 206 F. Supp. 2d at 975. There are no allegations in the Underlying Actions that lead or other alleged metals flaked off or released from the jewelry. Instead, Auto-Owners' contends that the metals were passively "absorbed" through the skin. No policy language or case law supports such a broad interpretation of the Policy. Auto-Owners could have included "absorption" in its Pollution exclusion, but it chose not to. It may not retroactively rewrite the Policy at its convenience. At a minimum, the Pollution exclusion is ambiguous and must be construed in favor of insurance coverage.

Third, even if the metals are considered "pollutants," they were not discharged or released from a site or premises controlled by Paparazzi Parties. (Ex. B at Auto-Owners_000175–77). There are no allegations that lead or nickel were *discharged* or *released* from any Paparazzi facility. In fact, the central premise of Auto-Owners' position is that the claimants in the Underlying Actions "absorbed" the metals. (*See* Dkt: 45: Auto-Owners' Opposition to Motion for Partial Summary

BN 84152205v3

Judgment at 9–10.) But there are no allegations that any (much less all) of the claimants were exclusively on a premises, site, or location controlled by Paparazzi when the alleged absorption occurred. Engaging in more double speak, Auto-Owners simultaneously contends that at some point these alleged pollutants must have left a Paparazzi manufacturing or distribution facility, so they must have been "discharged from a premises, site, or location controlled or used by [Paparazzi]." (*Id.* at 10.) This position is not supported by the Policy, the allegations in the Underlying Actions, or legal authority. Moreover, accepting the interpretation urged by Auto-Owners would render the phrase "actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" meaningless. Under Auto-Owners' faulty analysis, if an individual was poisoned after ingesting pure gold or silver jewelry, the Pollution exclusion would apply to everyone involved in chain of distribution because, at some point, the jewelry was at a premise, site, or location owned or controlled by the insured. As another example, the exclusion would apply to the fishermen who caught and transferred fish (*e.g.*, mercury) off of their boat. It would also apply to anyone involved in the manufacturing, distribution, or sale of cigarettes (*e.g.*, arsenic) or batteries (*e.g.*, cadmium). At bottom, Auto-Owners is arguing a position that would render coverage illusory to many businesses and insureds throughout the country.

To sum, Auto-Owners must establish that the Pollution exclusion clearly and unmistakably excludes the Underlying Actions from coverage. It cannot do so. Neither the Policy language nor the allegations in the Underlying Actions support application of the Pollution exclusion. No pollutant was discharged from a premises, site, or location owned or controlled by Paparazzi Parties. To the extent Auto-Owners attempts to chart new ground with novel legal theories, it only

14

illustrates, at most, an ambiguity that must be construed in favor of coverage, and therefore triggering the duty to defend.

### 4. Damage to Your Product Exclusion

Again, Auto-Owners contends that the Damage to Your Product exclusion applies to some but not all of the allegations in the Underlying Actions. But it fails to identify the claims, the particular lawsuits, or the extent to which this exclusion applies. Auto-Owners cites no legal authority in support of its position. Nor does Auto-Owners discuss the Policy language. Notably, the exclusion applies to "property damage"— not damages due to bodily injury. (Ex. B at Auto-Owners_000177.) Each of the Underlying Actions allege damages due to *bodily injury*, so this exclusion is wholly inapplicable when evaluating Auto-Owners' duty to defend. A partially applicable

## II.    Paparazzi Is Entitled to a Defense Under the EPL Endorsement

Paparazzi is also entitled to a defense under the EPL Endorsement as the *Teske* and *Souza* actions plainly allege wrongful employment acts against an "employee" — as defined by the Policy. Auto-Owners cannot credibly claim that there is no potential for coverage by the allegations in the *Teske* and *Souza* actions. And none of the exclusions apply.

### A. Insuring Clause Satisfied — The *Teske* and *Souza* Actions Allege Wrongful Employment Acts Against Employees.

At the outset, the Policy defines "employee" to include those "individuals whose labor or service is engaged by and directed by [the insured] for remuneration," including independent contractors. (Ex. B at Auto-Owners_000169.) The claimants in the *Teske* and *Souza* Actions are former Paparazzi Consultants, who were recruited (*i.e.*, engaged and directed) by Paparazzi to sell

15

jewelry in exchange for commissions, bonuses, and incentive awards (*i.e.*, remuneration). (Ex. E at ¶ 2; *see also* Ex. F at ¶ 6.) This plainly satisfies the Policy's definition of "employee." Auto-Owners cites to a number of fact-intensive tests to make its conclusory claim that the claimants would not be classified as "employees" under state law. Such tests are entirely irrelevant here. Regardless, the fact questions raised by those tests are inappropriate for resolution at this stage. *See* Utah Admin. Code R994-204-303 (noting fact intensive inquiry). At a minimum, the allegations are sufficient to potentially bring the claims within the definition of "employee."

The *Teske* and *Souza* Actions also allege "wrongful employment acts," which the Policy defines to include "employment-related misrepresentations." (Ex. B at Auto-Owners_000169–70.) The claimants allege that they chose to be Paparazzi Consultants based on Paparazzi's representations during recruitment about Paparazzi products. (*E.g.*, Ex. F at ¶¶ 13–23; Ex. E, at ¶ 1.) The claimants allege that they would not have become or continued as Consultants, *i.e.*, an "employee" under the Policy, but for Paparazzi's alleged misrepresentations. (Ex. F, at ¶¶ 13–23; Ex. E, at ¶¶ 13–23.) This plainly satisfies the definition of "wrongful employment act."

The *Peterborough Oil Co. v. Great American Insurance Company* case cited by Auto-Owners is easily distinguishable as it involves an insurer's unsuccessful attempt at enforcing a CGL policy exclusion. 397 F. Supp. 2d 230, 238 (D. Mass. 2005). However, unlike an exclusion, the EPL Endorsement's insuring clause must be interpreted broadly, especially when evaluating the insurer's duty to defend. *YS Garments v. Continental Cas. Co.*, No. 17-03345, 2018 WL 3830178, at *8–9 (C.D. Cal. Jul. 13, 2018) (finding duty to defend on broadly drafted complaint), vacated in part on other grounds, *YS Garments v. Continental Cas. Co.*, 828 Fed. Appx. 354 (9th

Cir. 2020). Like *YS Garments*, the *Teske* and *Souza* Actions are "filled with allegations of acts, omissions, and misleading statements that include employment-related misrepresentations." *Id.*

Finally, there can be no real dispute that the Underlying Actions commenced during the coverage period and after the retroactive date of November 1, 2019. (Ex. B, Auto-Owners_000022.) For example, in the *Teske* Action, Ms. Teske signed up to be a Paparazzi Consultant on October 24, 2020 — after the retroactive date — relying on Paparazzi's alleged promises that its products were lead and nickel-free. (Ex. E, ¶¶ 13–14.) The *Souza* Action does not even state the dates on which the claimants became Consultants — *i.e.*, employees for purposes of the Policy — and thus cannot support Auto-Owners' retroactive date argument. But that action does allege distinct representations made on Paparazzi's website, advertisements, promotional materials, and consultant materials after 2019, and thus after the retroactive date. (*E.g.*, Ex. F, ¶¶ 85–86.) Without citation to legal authority, Auto-Owners attempts to lump all employment-related misrepresentations into a single act through a disingenuous interpretation of "related wrongful employment acts." (Ex. B, Auto-Owners_000169–70.). The *Teske* and *Souza* Actions are filled with allegations of distinct acts, omissions, and misleading statements occurring on websites, print advertisements, materials provided to consultants, and elsewhere. These are not the "same, related, or continuous." (*Id.*) Nor do they arise from the same "common nucleus of operative facts." (*Id.*) To the extent Auto-Owners argues otherwise, the Policy language is ambiguous and must be construed in liberally in favor of coverage. Moreover, that argument would simply raise fact issues on which Auto-Owners cannot carry its burden at the summary judgment stage.

17

At bottom, Auto-Owners has a duty to defend. The *Teske* and *Souza* Actions contain allegations that trigger coverage under the EPL Endorsement. At a minimum, the actions and ambiguous policy language raise the potential for a covered claim, requiring Auto-Owners to defend.

### B. None of the EPL Endorsement Exclusions Conclusively, Unmistakably, and Completely Negate the Duty to Defend.

Again, Auto-Owners argues for application of the exclusions in the EPL Endorsement as if it was arguing the duty to indemnify — not the duty to defend. Auto-Owners fails to identify how each exclusion applies to the particular allegations, damages, and claims in each of the lawsuits to somehow completely negate its duty to defend. An insurer may not simply throw the exclusions at the wall and ask its insured (and the Court) to piece together the coverage puzzle. The insurer must demonstrate that the exclusions clearly and unmistakably apply, and there is no potential for any coverage. Auto-Owners cannot do so.

To start, the Prior Knowledge exclusion does not apply. There is no allegation that Paparazzi Parties knew of each incident, circumstance, or wrongful employment act alleged in the *Teske* and *Souza* Actions prior to the Policy's effective date. (Ex. B, Auto-Owners_000022, Auto-Owners_000164.) Factually, there are numerous allegations of distinct wrongful employment acts that occurred at various times from 2019 to 2022, including acts after the Policy's effective date. (*See supra* Section II.A.) The actions also allege that Paparazzi "should have known" that the products it sold posed a safety risk and were defectively designed. (Ex. E, at ¶ 96; Ex. F, at ¶ 141.) Contrary to Auto-Owners' contention, this allegation does not establish that Paparazzi Parties *knew* the alleged employment misrepresentations were false. This is an ordinary *negligence* allegation

18

to which the Prior Knowledge exclusion never would apply, creating potential liability for Paparazzi that would not be excluded and thus trigger a duty to defend. And finally, Auto-Owners citation to *Rivelli* is unpersuasive as that case involved a specific warranty about prior knowledge made by the insured in procuring an insurance policy — not an exclusion in a standard policy form. *Rivelli v. Twin City Fire Ins. Co*., 359 Fed. Appx. 1, 5 (10th Cir. 2009); *see also Rivelli v. Twin City Fire Ins. Co*., No. 08-cv-01225, 2008 WL 5054568, at *2 (D. Colo. Nov. 21, 2008). Moreover, the complaint in *Rivelli* was narrowly drafted to allege that the insured had only *actual* knowledge of the events. *See Rivelli*, No. 08-cv-01225, 2008 WL 5054568, at *2. In short, Auto-Owners cannot establish that the Prior Knowledge exclusion clearly and unmistakably applies to any (much less all) claims, and thus Auto-Owners must defend.

Next, Auto-Owners contends that the Contractual Liability and Bodily Injury exclusions somehow apply, without discussing the allegations, policy language, or legal authority. However, a cursory review of the Policy shows they do not. And even if they did have limited application, they do not negate the duty to defend. The Contractual Liability exclusion applies to liability arising out of an "express contract or agreement." (Ex. B, Auto-Owners_000163-164.) But there is no breach of contract claim in the *Souza* Action. (Dkt. 40: Motion at Statement of Facts ("SOF"), ¶ 42.) Only one of the causes of action in the *Teske* Action is for breach of contract. (SOF, at ¶ 55.) Thus, the *Teske* case asserts claims creating potential liability for Paparazzi to which the Contractual Liability exclusion would not apply, and thus triggering a duty to defend.

On the other hand, the Bodily Injury exclusion removes from coverage "bodily injury," except claims for "emotional distress" arising out of wrongful employment acts. (Ex. B, Auto-

Owners_000163–64.) The exclusion is drafted much more narrowly than the coverage grant for damages arising out of bodily injury in Coverage A. Regardless, the *Souza* Action alleges pain and suffering, which could include emotional distress from a wrongful employment act. (Ex. F, ¶¶ 125, 132.) And the *Teske* Action alleges the physical and emotional distress by Ms. Teske, which could include emotional distress from a wrongful employment act. (Ex. E, ¶¶ 15–17.)

Auto-Owners invokes for the first time the Employer's Liability Exclusion purportedly to demonstrate that Paparazzi Parties' position is inconsistent.[5] This argument misses the mark. Alternative pleading is common practice. The Underlying Actions contain numerous alternative allegations and claims. In broadly drafted and complex lawsuits, like the Underlying Actions, the duty to defend may arise under different portions of an insurance policy. Whether Auto-Owners owes a duty to indemnify for particular claims or damages is yet to be decided by the factfinder in the Underlying Actions.

Auto-Owners asks this Court to engage in an academic exercise. Even if the Prior Knowledge, Contractual Liability or Bodily Injury exclusions somehow applied to some of the claims in the Underlying Action, Auto-Owners has failed to demonstrate how the exclusions fit together to completely absolve it of its duty to defend. Auto-Owners must provide a defense.

### III.     Reimbursement of Defense Costs.

Absent an express provision, an insurer may not seek reimbursement of defense costs. *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468 (Utah 2012); *see also Ohio Cas. Ins. Co. v.*

---

[5] To the extent Auto-Owners attempts to rely on this exclusion, it waived this argument because it failed to timely assert its applicability.

*Unigard Ins. Co.*, 268 P.3d 180, 186 (Utah 2012) (declining insurer's request for reimbursement because it would be inequitable due to insurer's duty and ability to control defense). But Auto-Owners fails to cite — and cannot cite — any Policy provision allowing for reimbursement, or any case law or legal authority that allows for reimbursement in the absence of an express provision in the Policy. As an initial matter, Auto-Owners' reimbursement argument fails because, as explained above, each of the Underlying Actions create at least some potential liability that would be covered under the Policy, and thus Auto-Owners has a duty to defend. Moreover, it would be patently unfair to Paparazzi for Auto-Owners to control the defense of the Underlying Actions, compel Paparazzi to be represented by legal counsel handpicked by Auto-Owners and thus deny Paparazzi the legal counsel of its choosing, refuse to reimburse Paparazzi's substantial out-of-pocket defense costs, compel Paparazzi to separately litigate an insurance coverage dispute, and then demand that Paparazzi pay for that defense that Auto-Owners controlled. As a matter of contract, law, and equity, Auto-Owners may not seek reimbursement of its defense costs. To the contrary, as this action proceeds, Paparazzi will establish that it is Auto-Owners that owes Paparazzi reimbursement of substantial defense costs that Paparazzi has advanced (for the benefit of Auto-Owners-appointed defense counsel, no less).

## IV.     Arguments on Breach of Implied Covenant of Good Faith and Fair Dealing.

Auto-Owners asks for summary judgment on all of Paparazzi's claims based solely on Auto-Owners' faulty analysis of the duty to defend. As detailed above, Auto-Owners' position clearly is wrong. Most notably, Auto-Owners fails to articulate its coverage position in any way that would allow this Court to provide specific and conclusive declaratory relief. Auto-Owners

owes a defense in the Underlying Actions until such time that it can establish with extrinsic evidence that it does not have a duty to indemnify. For this reason alone, all of the relief requested in Auto-Owners' Motion for Summary Judgment should be denied.

Regardless, Auto-Owners' litigation conduct illustrates the independent viability of its claim for breach of the covenant of good faith. The covenant of good faith requires that the insurer "diligently investigate the facts to enable it to determine whether a claim is valid, . . . fairly evaluate the claim, and . . . thereafter act promptly and reasonably in rejecting or settling a claim." *Colony Ins. Co. v. Human Ensemble, LLC*, 299 P.3d 1149, 1153 (Utah App. 2013). Auto-Owners has not done so. Auto-Owners admits that the law requires a complete duty to defend, without a right of reimbursement, if any covered claims are asserted. (*See* Dkt. 45: Reply at 28.) Auto-Owners effectively concedes that the exclusions it invokes do not bar coverage for *all* claims asserted in all suits, triggering a duty to defend. Recognizing this fact, Auto-Owners has been controlling Paparazzi's defense in the Underlying Actions for multiple years. Now, Auto-Owners commits bad faith by denying its duty to defend and continuing pursuit of reimbursement, despite no supporting policy language or case law.

## CONCLUSION

To avoid the duty to defend, Auto-Owners must show that none of the allegations in the Underlying Actions could potentially trigger coverage under the Policy or that a Policy exclusion conclusively applies to exclude all potential for such coverage. Auto-Owners cannot do so. The broadly drafted allegations in the Underlying Actions establish that there is at least the potential for coverage under Coverage A and the EPL Endorsement. And none of the exclusions

conclusively apply to bar all potential coverage. In fact, Auto-Owners has yet to specifically articulate how any of the exclusions even partially apply to the allegations, claims, or damages in the Underlying Actions.

For the reasons set forth above, Paparazzi Parties respectfully request that the Court deny Auto-Owners' Motion for Summary Judgment in its entirety and grant Paparazzi Parties' Motion. Auto-Owners must provide a defense until resolution of the Underlying Actions.

DATED: August 23, 2024

**BUCHALTER**
**A Professional Corporation**

*/s/ Douglas P. Farr*
Douglas P. Farr
Tucker F. Levis
Jack. L. Darrington
*Attorneys for Defendants/Counterclaimants*
*Paparazzi, LLC; Misty Kirby; Trent Kirby; Chantel*
*Reeve; and Ryan Reeve*

I, Douglas P. Farr, certify that this document contains 6,179 words and complies with DUCivR 7-1(a)(4).

BN 84152205v3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 23, 2024, a true and correct copy of the foregoing was served via the court's electronic filing system to all counsel of record.

*/s/ Corrine Barrientos*

BN 84152205v3